Ewing, C. J.
This action was brought by the plaintiff, who is a ship carpenter, to recover compensation -for work, labor and materials in constructing a vessel, called the Elizabeth, for the defendants. The.declaration contains the common counts, to which the defendants pleaded the general issue.
*Upon the trial, questions of fact, almost exclu■sively, were developed. The building of the vessel, which was commenced about the beginning of June, and finished *178 near the close of November, 1824, was not controverted; nor was the liability of the defendants to make compensation therefor, to whomsoever such compensation rightfully belonged.
The'principal questions were, first, whether the vessel was built by the plaintiff alone, as he insisted, or by the plaintiff and one Darby Oram, in partnership, as was alleged by the defendants; and second, the price of the work,and materials, or the amount of compensation, if any, to be recovered.
Upon each, evidence was given by both parties.
The plaintiff now insists that the verdict which was rendered for the defendants should be set aside, for several reasons.
1. In the first place, because against evidence. And he contends that the evidence fully established the position, to be maintained by him, that the work was done by himself alone, and not by Darby and Henry Oram in company.
The plaintiff insists on the following matters :
1. The agreement to construct the vessel was made with Henry Oram; Darby Oram does not appear to have been present or consulted.
2. The evidence of Darby Oram, who testified that there was no partnership between them in the construction of the vessel; that though there had been in the building of a vessel called the Eclipse, for the defendants or one of them, a special not a general partnership, there was neither in respect to the vessel now in question.
3. The evidence of Johnson Oram who testified that Henry built the vessel himself and there was then no partnership between him and Darby.
4. The testimony of some witnesses who resided near the Orams and the ship yard, and had transactions of business with them in their individual characters and who had not heard and had no knowledge of any partnership.
*5. Bishop, one of the defendants, had individual accounts against them as early as 1821, and had at the same circuit court recovered a verdict against Henry Oram for an individual account to a largé amount.
*179 The defendants, on the other hand, insist that the partnership was fully established by the evidence.
1. The agreement, though Henry Oram only appeared in making it, was with the firm, if a partnership existed. Henry, it was said, was the more active man of business.
2. In constructing the Eclipse, just before the building of the Elizabeth, it was admitted that Darby and Henry had been partners.
3. Elisha Smith, a witness called by the defendants, testified that the plaintiff in a conversation in the ship yard in April, 1826, told him that he and Darby Oram, his father, were and had been for several years in partnership in building vessels.
4. Archibald Thompson testified that he did blacksmith work upon the Elizabeth, employed by Darby Oram. The charges in his book were against Darby Oram alone, and so his bill was made out. Henry went with him to Bishop to settle the bill, and it was settled there.
5. Benajah Mundy also did iron work on the vessel, for which Darby gave him directions, and his bill was paid by Bishop.
6. Richard M. Stout, a witness called by the defendants, stated among other things, that shortly after an interview between Henry Oram and Bishop, in which a settlement had been the subject of their discourse, Darby Oram came to the store of Bishop, and said, Now I suppose you think you have settled with Hank, but it shant stand. I’ll have two thousand eight hundred and fifty dollars for the boat. And as he left the store, he said he would have forty dollars a ton for her and nothing less.
7. Sundry orders or drafts were read in evidence bearing date in July, November and December, 1824, drawn on Bishop, and signed D. and H. Oram, in the handwriting of Henry *Oram, the plaintiff. One of these was a draft for two hundred and fifty-one dollars and seventy-eight cents, in favor of Simon Hillyer, “ for work done on *180 schooner,” and which, Hillyer testified, was for work done by him on the schooner in question. Another, in favor of Aaron Van Uorstrand, which he said was for work done on the- same vessel.
8. An account had been rendered in the name of Darby and Henry Oram for goods furnished by Bishop up to 1st January, 1825, of which no complaint had been made.
9. Entries to the credit of D. and H. Oram for 'building the vessel, -were made in the.books of Bishop on the 7th March, 1826, in the presence of Henry Oram and without objection from him.
10. Bichard M. Stout testified that in April, 1827, a conversation took place in the store, between the plaintiff and Bishop, respecting a settlement by reference; that Bishop asked Oram what connection had subsisted. Oram evaded an answer by saying they had never had a settlement; but on being farther pressed, said there was an account kept of all the materials for building the boats in the name of Darby and Henry Oram, and when a boat was built, this amount was deducted from the amount of sales, and the residue divided. They had never settled exactly, but he drew rather more than one-fourth, and his father Darby and brother Johnson drew one share.
Under these circumstances, the defendants insisted that the work was done, not by Henry Oram alone, but by him and Darby as partners, and that he alone was not entitled to recover ; and they insisted that if the plaintiff alone was permitted, to recover, great injustice would be done to them, as in the progress of the work goods had been furnished from the store from time to time, which had been charged to Darby and Henry Oram, which could not therefore be offset in this suit, and for which they might be compelled to resort to the uncertain issue of legal measures; and their defence, therefore, on the ground of partnership, was not, they said, a mere technicality, or to turn the plaintiff round to another suit, but to ensure justice to themselves.
*181 The question of partnership thus raised by the proofs was expressly put to tho jury, with instructions that if they found *in fact that the work had been done by Darby and Henry Oram in partnership, their verdict should be for the defendants.
The sketch just drawn shews that evidence entitled to much consideration was given on both sides, raising a subject for the jury, of grave deliberation; and at the same time shews most satisfactorily that such was the strength of the proofs on the part of the defendants, that if the jury thought proper to yield to it, we can have no just authority to say they erred, or that the evidence on the part of the plaintiff so clearly outweighs the other, that the verdict ought not to stand.
2d. In the second place. The plaintiff farther assigns as a reason for setting aside the verdict, the admission on the trial, of the books of account of James Bishop, one oí the defendants.
The defendants were not partners in mercantile affairs. Bishop, one of them, kept a store, from which, while the vessel was building, articles of merchandize were from time to time furnished on account of the vessel as was understood to tho plaintiff and to Darby Oram, as well as to the brothers of tho plaintiff, who were working with him as ship-carpenters.
Richard M. Stout, tho witness already mentioned, testified that ho was a olork of Bishop; that he had been present at an interview between the parties on the 31st of January, 182G, to fix on tho price of the vessel; that after some discussion, Bishop agreed to give at the rate of thirty-five dollars per ton, with which Oram appeared to be content, although ho still ''complained it was an hard bargain; that Oram came again afterwards to the store, and the amount of the extra work was then fixed at $71 55-100, and the witness thought all then finally settled, except closing the account; that Bishop then made in his books, day book and *182 ledger, an entry of the amount of the extras to the credit of Darby and Henry Oram in the presence of Henry, who was looking on at the time; that Bishop then shewed him the entry previously made to the credit of Darby and Henry Oram, for building- the vessel at thirty-five dollars per ton, two thousand one hundred and sixty-four dollars seventy cents, to all which, no objection was made by him. The defendants then proposed to read the entries in the books and they were read.
*Now these books were not produced as evidence per se either of a settlement or to fix the price of the work > for they would then have been within the case cited by the plaintiff’s counsel from 4 Halst. 268, Prest. v. Mercereau, and ought to have been excluded. A man is not permitted in this way to make evidence for himself. But the entries in the books were admitted in connection with the testimony of the witness. And if the parties had fixed on a price, and an entry thereof was made and afterwards shewn to Oram without objection on his part; or if the entry was at once made in his presence and with his knowledge, such entry, in connection with such proof, was competent evidence. It was proper to be submitted to the jury, to receive the consideration and weight of which they might deem it worthy. The party does not thereby make evidence for himself. On the contrary, it is evidence made by both parties; and the influence to which it may be entitled results from the fact that it has the sanction of both parties.
It was argued that the books were taken out by the jury, and as they found accounts in them against Darby and Henry Oram, and Johnson Oram and Abraham Oram, and against the plaintiff individually, they became confused and concluded they ought not to find for the plaintiff in this action while those accounts remained unpaid and unsettled.
This argument seems to me to be founded on allegations unsupported by any proof in the state of the case. The *183 questions on which the verdict depended were distinctly explained to the jury, and they were expressly instructed that there could be no offset of any of these accounts.
8. In the third place. Another reason for setting aside the verdict is the alleged misconduct of the jurors as disclosed in an affidavit of the constable who attended them.
This affidavit while it shews conduct in some of the jurors which the court must regret, does not establish any ground to disturb tho verdict.
1. In the morning about daylight, the constable went out into the street and saw a part of the jury there, throe or four and perhaps more, whom he took back into the jury room.
But there is no proof that they had intercourse or conversation *with, or even saw, any other person than the constable; and the mere fact of some of the jurors being for a time thus separate from their fellows is not in a •civil action sufficient ground to set aside a verdict. Clark v. Cole, Penn. 271; Crane v. Sayre 1 Hals. 110; Smith v. Thompson, 1 Cowen 231; The People v. Douglass, 4 Cowen, 126. Other circumstances combined to produce the decisions of this court, in Morrow v. McLennan, Penn. 918; Demund v. Gowen, 2 South. 387; Shepherd v. Baylor, ibid 827.
2. The jury were out all night; during the evening they were quite still; but the last part of the night they made considerable racket and behaved like men who had been drinking freely, and made great noise and confusion; such is the statement of the constable.
There is no proof that liquor was furnished to the jury. 'The opinion the officer entertained of their behavior is his inference from their noisy conduct. It may have been just, but it is equivocal; and with every disposition to preserve the purity of the jury room and to guard against improper intrusion, I find no warrant for setting aside a verdict because jurors are unable to agree and spending a wearisome night, may at times have made more noise than comported with strict propriety.
*184 Affidavits of both the defendants have been submitted to us that they did not treat or authorize any person to treat the jury before the verdict was rendered.
I ¡find no sufficient reason to set aside the verdict.
Ford, J., and Drake, J., -concurred.